UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AMERICAN CIVIL LIBERTIES
UNION OF FLORIDA, INC., et al.,

    Plaintiffs,

v.

                                    No. 8:14-cv-1606 SDM-TG

CITY OF SARASOTA, et al.,

    Defendants.

## PLAINTIFFS' MOTION FOR REMAND AND MEMORANDUM OF LAW IN SUPPORT

Pursuant to 28 U.S.C. § 1447(c), Plaintiffs American Civil Liberties Union of Florida, Inc., and Michael Barfield (collectively "ACLU") move this court to remand this case back to state court for further proceedings and state as follows:

### I.  BACKGROUND

On May 19, 2014, the ACLU requested Defendants Detective Michael Jackson and his employer Sarasota Police Department (City of Sarasota) produce public records pursuant to the Florida Public Records Law, Chapter 119, Florida Statutes. State Court Record (DE 1-2), p. 46-47. The ACLU sought records

relating to Sarasota Police's use of cell phone tracking equipment like Stingrays.[1] *Id.*, p. 46.

In response, on May 22, 2014, Det. Jackson acknowledged that he had sole possession, custody, and control of numerous state applications to use a Stingray and the orders granting the request. Verified Compl. (DE 2), ¶ 15-16. Jackson had applied for these trap and trace orders to a Florida circuit judge pursuant to §§ 934.32 and 934.33, Fla. Stat. *Id.*, ¶ 7, 15-16. Jackson scheduled an appointment for the ACLU to inspect these public records for May 27, 2014, at 2:30 pm at the Sarasota Police Department.[2] *Id.*, ¶ 16. However, hours before the planned inspection, the Sarasota Police Lt. Pat Ledwith canceled the meeting. State Record (DE 1-2), p. 48. The City of Sarasota explained that the U.S. Marshal's Service and the U.S. Attorney had instructed it not to release its state Stingray applications and orders. The Sarasota Police had learned that Det. Jackson, who is cross-sworn as a deputy U.S. Marshall, maintains those records "pursuant to his duties with the Marshal's [Service]." *Id.* Accordingly, the

---

[1] Stingrays, also known as "cell site simulators," mimic cell service providers' towers and broadcast electronic signals that force cell phones in the area to register their identifying information and location. Stingrays collect information not only about specific targets of investigations, but also about hundreds or thousands of innocent third parties.

[2] The Stingray applications and orders that Det. Jackson intended to show the ACLU involved closed cases, because open cases would likely contain "active criminal investigative information" that would obviously make portions of the records exempt from the Florida Public Records Law. § 119.071(2)(c)(1), Fla. Stat.

City of Sarasota then claimed that the records it and Det. Jackson were about to produce were, after further consideration, actually records of the U.S. Marshall's Service.  *Id*.

When the ACLU learned that the Defendants now considered the state Stingray applications and orders federal property, on May 28, 2014, the ACLU requested that the Defendants maintain them until the ACLU could test this assertion through a public records lawsuit.  State Record (DE 1-2), p. 49.  However, days later, in an obvious attempt to forestall the planned court challenge, the U.S. Marshall's Service took possession of the state Stingray applications and orders.  *Id*., p. 51.

On June 3, 2014, in a Florida circuit court, the ACLU filed a petition for a writ of mandamus.  Verified Petition (DE 2).  The ACLU sought an order compelling Det. Jackson and the Sarasota Police to either produce the requested state Stingray applications and orders or show cause why they should be excused from the Florida Public Records Law.  *Id*.  The following day, the state court set a "non-evidentiary status conference" for June 12, 2014.  State Record (DE 1-2), p. 61 (Order Setting Status Conference).

Two Assistant U.S. Attorneys, John Rudy and Sean Flynn, appeared[3] on behalf of the United States at this status conference hearing. State Record (DE 1-2), p. 65. They "informed the court" that Det. Jackson is cross sworn as a special deputy U.S. Marshal. State Record (DE 1-2), p. 68 (Order Dismissing Case). Based solely on this unsworn representation, the state court concluded that Det. Jackson created and maintained the Stingray applications and orders as a federal officer, not a city police detective. State Record (DE 1-2), p. 67-70 (Order Dismissing Case). The court did not provide the ACLU an opportunity to submit evidence, and did not credit the ACLU's factual allegations set forth in its verified complaint. *Id*.

On June 30, 2014, Defendant Michael Jackson filed a Notice of Removal (DE 1) of this state court proceeding to federal district court pursuant to 28 U.S.C. §§ 1441, 1442, and 1446. Jackson stated the grounds for removal were two bases of original jurisdiction the federal district court had over the lawsuit: Federal question[4] (28 U.S.C. § 1331) and mandamus action against a federal agent (28

---

[3] The state judge characterized the appearance as a "limited appearance." State Record (DE 1-2), p. 67 (Order Dismissing Case). It unclear whether the AUSAs represented Det. Jackson, a party in this hearing, or the U.S. Government as a nonparty and friend of the court.

[4] Plaintiffs understand that the federal defense predicating the federal question is whether a state court can compel a federal agent to provide public records. *See Mesa v. California,* 489

U.S.C. § 1361). *Id*. at ¶ 5. The U.S. Government essentially contends that the ACLU's lawsuit seeks to compel a federal agent to produce federal records.

As the state court dismissal order was entered June 17, 2014, and filed with the clerk ("rendered", *see* Fla.R.App.P. 9.020(i)) on June 18, 2014, neither the time for a state appeal nor rehearing had run before the U.S. Government removed this case. *See* Fla.R.App.P. 9.110(b) (appeal); Fla.R.Civ.P. 1.530(b) (rehearing).

## II.   ARGUMENT

Det. Jackson prepared and maintained the Stingray applications filed in state court and approved by one or more state judge in connection with his duties as a Sarasota Police Detective. Therefore, a federal court lacks jurisdiction to hear this lawsuit brought under Florida law to compel a Florida officer to produce Florida public records. This Court should remand this lawsuit back to a Florida state court for further proceedings.

### A. Standard for Remand

A defendant may remove a State court civil action to federal court when "the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). However, "[i]n a motion to remand, the removing party bears the

---

U.S. 121 (1989) (holding a federal officer removal under § 1442(a) must be predicated upon averment of a federal defense)

burden of showing the existence of federal jurisdiction." *Diaz v. Sheppard,* 85 F.3d 1502, 1505 (11th Cir.1996) (citing *Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1373 (11th Cir. 1998)). If a factual dispute exists over the court's jurisdiction predicating removal, the district court properly conducts an evidentiary hearing to resolve the factual dispute and rule on its jurisdiction. *In re Brand Name Prescription Drugs Antitrust Litig.*, 248 F.3d 668, 671 (7th Cir. 2001). When the defendant fails to establish the district court's original jurisdiction, the case should be remanded to state court. 28 U.S.C. § 1447(c).

### B. Federal District Lacks Jurisdiction Because Det. Jackson Created, Used, and Maintained the State Stingray Applications and Search Orders as a Sarasota Police Detective

Federal agents do not apply for and receive state search orders or warrants. Federal agents should not "flout" federal "standards for law enforcement" by seeking and obtaining state search orders or warrants. *Rea v. U. S.*, 350 U.S. 214, 217-18 (1956). Furthermore, Federal Rule of Criminal Procedure 41 operates to prohibit federal agents from using the fruits of a search when they obtain a state search orders or warrants. *United States v. Lehder-Rivas*, 955 F.2d 1510, 1522-23 (11th Cir. 1992). Thus, as a practical matter, the exclusionary rule makes a federal agent's application and use of state search orders or warrants pointless.

Because Det. Jackson in a federal capacity should not apply for and receive state search orders or warrants and doing so would be pointless, Det. Jackson most

certainly did not do so.  Det. Jackson's bare assertion that he created or maintained the Stingray applications and orders "in his capacity as a Special Deputy United States Marshal,", *see* Det. Jackson's Decl. (DE 3), is doubtful at best.  Instead, Det. Jackson most certainly sought, obtained, and maintained the state Stingray application and orders as a city police officer.  This is what the state Stingray applications and orders will show.  As a result, this Court lacks jurisdiction over this case because the state court would compel Det. Jackson to produce the state Stingray application and orders in the capacity he maintains them—a Sarasota detective, not a federal agent.

**1.      Federal Officer Must Follow Federal Court Rules**

The U.S. Supreme Court, in *Rea*, plainly stated "[t]he obligation of the federal agent is to obey the [federal court] Rules."  *Rea*, 350 U.S. at 217; *see also United States v. Radlick*, 581 F.2d 225, 228 (9th Cir. 1978) ("The Federal Rules are designed as standards for federal officers and it is the obligation of the officers to obey them").  In *Rea*, the district court suppressed evidence obtained from a search because the federal narcotics agent obtained a federal warrant without complying with the strict requirements of Federal Rule of Criminal Procedure 41.  *Id*. at 214-215.  However, the federal agent was undeterred by his improper exercise of federal authority in searching and seizing evidence without an

appropriate warrant as required by the Rule 41. *Id.* at 215. Thus, when the federal indictment was dismissed, the federal agent swore a complaint before a state judge for the arrest of the defendant. *Id.* The state intended to use the federal agent's testimony to convict the drug trafficker in state court. *Id.* However, observing that the federal agent had "violated the federal Rules governing searches and seizures," the U.S. Supreme Court forbid the federal agent to testify in state court. *Id.* at 217. This underscored its "supervisory powers over federal law enforcement agencies" unrelated to whether evidence could constitutionally be admitted in state court. *Id.*

Importantly, the Court found irrelevant whether the federal agent complied with "state practice," or whether the warrant was constitutionally sufficient. *Id.* In so ruling, the Court made clear that federal agents cannot simply comply with state rules or practices for obtaining a search warrant. Federal agents can only obtain and execute federal search warrants after complying with the "strict [federal] standards set for searches and seizures." *Id.* The Court reasoned that these limits on federal law enforcement "are designed to protect the privacy of the citizen." *Id.* at 218. "That policy is defeated if the federal agent can flout them and use the fruits of his unlawful act either in federal or state proceedings." *Id.*

Because Det. Jackson in his capacity as a Special Deputy U.S. Marshall should not "flout" the federal law enforcement standards, he most certainly sought,

received, and obtained the state Stingray search orders in his capacity as a city detective. A warrant is required to use a Stingray or similar cell phone tracking device. *See* Fed.R.Crim.P. 41(e)(2)(C); *In re Application for an Order Authorizing Installation and Use of a Pen Register and Trap and Trace Device*, 890 F. Supp. 2d 747, 752 (S.D. Tex. 2012) (rejecting application for pen register order authorizing Stingray use and explaining that the government should seek a warrant instead); *see also United States v. Rigmaiden*, 2013 WL 1932800, at *3 (D. Ariz. May 8, 2013) (explaining that federal agents obtained a probable cause warrant authorizing use of a Stingray device). Rule 41 requires federal agents to obtain search warrants from federal magistrates. Rule 41(b)(1). Only where no federal magistrate is "reasonably available," may a federal agent obtain a search warrant from a state court. *Id*. It is doubtful that the U.S. Marshal's Service could not find an available federal magistrate. What is most certainly the case is that Det. Jackson applied for and obtained the state Stingray search orders in his capacity as a Sarasota Police Detective. Federal agents must comply with Rule 41 requirements, including those that are not constitutionally mandated. *United States v. Moore*, No. 2:05-CR-50-FTM-29, 2006 WL 560640 (M.D. Fla. 2006).

### 2. Federal Officers who Fail to Comply with Federal Court Rules Cannot Use the Fruits of a Search

Not only should federal agents not subvert the federal court rules by procuring state search orders in lieu of a federal warrant, but doing so is pointless. Any fruits of a state Stingray search order would be inadmissible in federal court. *Lehder-Rivas*, 955 F.2d at 1522-23. Likewise, it stretches imagination why a federal agent would procure a state warrant as part of a state investigation to obtain evidence for a state prosecution. Because procuring a state Stingray search order would be pointless for a federal agent, Det. Jackson most certainly procured the search orders as part of his state duties as part of a state investigation.

The Eleventh Circuit deems inadmissible the fruits of any search where federal agents failed comply with Rule 41 when obtaining a search warrant. *Lehder-Rivas*, 955 F.2d at 1522-23 ("failure to meet the requirements of Rule 41 mandates a finding 'that the affidavit supporting the search warrant was inadequate and the evidence seized under that warrant must be suppressed.'" *Id*. at 1522 (citations omitted)). Although a state search warrant procured by state agents may permit the admission in federal court of evidence seized as part of a state investigation, the "state search warrant must comply with federal standards if the search was 'federal in execution.'" *Id*. at 1522 (quoting *United States v. Gilbert,* 942 F.2d 1537, 1539 (11th Cir. 1991) (other citations omitted). However, any

evidence obtained though the state Stingray orders would be inadmissible for two reasons, if Det. Jackson applied for them as a federal agent: First, the exception applies only when a *state* agent makes the application. *Id.* Second, a federal agent's application and participation in the search makes it a "federal in execution" and requires compliance with Rule 41 for seized evidence to be admissible. *Id.* However, the state trap and trace law falls short of Rule 41.

Evidence obtained with a state trap and trace would be inadmissible and therefore pointless because the state application process falls short of the requirements of Rule 41. A state officer may obtain a state trap and trace order upon a mere "certification" that information sought is relevant to the agency's ongoing criminal investigation. § 934.32(2)(a), Fla. Stat. The state court cannot probe the certification. § 934.33(5), Fla. Stat. ("A court may not require greater specificity or additional information beyond that which is required under s. 934.32 and this section as a requisite for issuing an order as provided in this section."). Notably, the state law does not require probable cause, only a certification of relevance. However, Rule 41(d) requires a sworn statement of probable cause. Accordingly, the application for a trap and trace order § 934.32, Fla. Stat., would necessarily fail to fulfill the procedural requirements of sworn probable cause. Accordingly, any evidence obtained from the state order would be inadmissible in federal court.

Furthermore, the good faith exception for non-compliance with Rule 41 announced in *United States v. Leon,* 468 U.S. 897, 926 (1984), is inapplicable here. In *Leon*, the U.S. Supreme Court upheld the admission of the fruits of a search pursuant to a warrant, issued by a detached and neutral magistrate, but ultimately found to be invalid. There, a state court had issued a search warrant to a state officer, though the affidavit failed to establish probable cause. *Id*. 903-904. Following this reasoning, the Eleventh Circuit has deemed admissible evidence seized with a state search warrant as part of a state investigation, even though the state warrant requirements were less than those in Rule 41. *Lehder-Rivas*, 955 F.2d at 1523. The Court found that it would be "objectively reasonable" for a state agent to follow state procedural rules. *Lehder-Rivas*, 955 F.2d at 1523; *see also United States v. Moore*, No. 2:05-CR-50-FTM-29, 2006 WL 560640 (M.D. Fla. 2006) (finding a good faith exception to the requirements of Rule 41 when state agents obtained and executed a search warrant in an investigation they expected to be prosecuted in state court).

However, no similar "good faith" excuse permits a federal agent to disregard federal procedural rules. Even when a good faith exception might exist, the evidence must still be suppressed when "'there is *evidence of an intentional and deliberate disregard of a provision in the Rule*.'" *United States v. Brown*, No. 13-11046, 2014 WL 2766780 (11th Cir. 2014) (quoting *United States v. Gerber,* 994

F.2d 1556, 1560 (11th Cir.1993)) (emphasis in original); *see also United States v. Jones*, 471 F.3d 868, 871 (8th Cir. 2006) (determining whether Rule 41 requirements apply by considering whether the warrant was "sought by a federal law enforcement officer" and "whether federal agents used state officers and more flexible state procedures as a means of avoiding the strictures of Rule 41."). If the Government's assertion is correct—and Det. Jackson was acting in his capacity as a federal agent when he applied for the numerous state Stingray orders—then he routinely and systematically disregarded federal procedural rules by seeking orders under looser, state standards. This "intentional and deliberate" disregard would nullify any application of *Leon*. *Brown*, 2014 WL 2766780.

Det. Jackson would not seek to disregard the strictures of Rule 41 and seek—as a federal agent—a state trap and trace order under looser, state standards. He would want any evidence seized as a result of the order to be admissible. Therefore, he most certainly applied for and obtained the state Stingray orders in his capacity as a city detective.

### 3. State Stingray Applications and Orders will Show Det. Jackson Acted in His Capacity as a Sarasota Detective

A proper examination of Det. Jackson and the state Stingray applications and orders will evidence that he applied for and received them in his capacity as a Sarasota detective. The state Stingray applications and orders would necessarily

reflect the person and agency who applied for the trap and trace order, *see* § 934.32(2), Fla. Stat., as well as the criminal offense being investigated, *see* § 934.33(2)(a)(4), Fla. Stat. On information and belief, these documents establish that Det. Jackson applied for and received them in his capacity as a Sarasota detective in order to investigate state crimes over which the U.S. Marshal Service has no principal jurisdiction. Therefore, a federal court lacks jurisdiction to hear this lawsuit and should remand this lawsuit back to a Florida state court for further proceedings.

### III.  CONCLUSION

Det. Jackson applied for, received, and maintained the state Stingray applications and orders pursuant to his duties as a Sarasota Police detective. Applying for such a state order as a federal agent would not only have been an improper disregard for the federal court rules, but the fruits of such a search would have been inadmissible and pointless. Furthermore, evidence from Det. Jackson and the state Stingray applications and orders will substantiate this ruling. Because Det. Jackson doubtless acted in his capacity as a state agent, this Court lacks jurisdiction and the case should be remanded to state court for further proceedings.

**WHEREFORE**, Plaintiffs request that the Court conduct any necessary hearing and then remand the case to state court for further proceedings and require

the U.S. Government to pay just costs and any actual expenses incurred as a result of its improper removal, pursuant to 28 U.S.C. § 1447(c).

Dated:       July 15, 2014

## CERTIFICATE OF CONFERRAL

Pursuant to M.D. Fla. Loc. R. 3.01(g), the below counsel conferred with opposing counsel in a good faith effort to resolve the issues raised in this motion. The opposing counsel oppose the relief requested in this motion.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed today the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all persons registered for this case, including any opposing counsel that have appeared.

**Respectfully Submitted,**

<u>**s/Benjamin James Stevenson**</u>
**Benjamin James Stevenson**
ACLU Foundation of Fla.
P.O. Box 12723
Pensacola, FL  32591-2723
Fla. Bar. No. 598909
T. 786.363.2738
F. 786.363.1985
bstevenson@aclufl.org

**Andrea Flynn Mogensen**
Cooperating ACLU Foundation of Fla.
Law Office of Andrea Flynn Mogensen, P.A.
200 S. Washington Blvd., Ste. 7
Sarasota FL 34236
Fla. Bar. No. 0549681
T. 941.955.1066
F. 941.955.1008
amogensen@sunshinelitigation.com

**Maria Kayanan**
Associate Legal Director
ACLU Foundation of Fla.
4500 Biscayne Boulevard
Miami, FL 33137
Fla. Bar. No. 305601
T. 786.363.2700
F. 786.363.1108
MKayanan@aclufl.org

*Counsel for ACLU*

<u>**/s/ Gregg D. Thomas**</u>
Gregg D. Thomas
Fla. Bar. No. 223913
**Thomas & Locicero PL**
601 S. Boulevard
Tampa, Florida  33606
T. 813.984.3066
F. 813.984.3070
gthomas@tlolawfirm.com
kbrown@tlolawfirm.com (secondary)

*Attorney for Michael Barfield*