UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AMERICAN CIVIL LIBERTIES
UNION OF FLORIDA, INC., et al.,

    Plaintiffs,

v.                                        CASE NO. 8:14-cv-1606-T-23TGW

CITY OF SARASOTA, et al.,

    Defendants.
_____/

**ORDER**

On June 3, 2014, the plaintiffs petitioned (Doc. 2) in state court to compel the release from the City of Sarasota and Michael Jackson "records related to the [state] application for and [the state] order approving the us[e] of Stingray devices." Michael Jackson, a detective of the Sarasota Police Department and a Special Deputy United States Marshal, maintained the records. (Doc. 1 at 1) Relying solely on the United States' unsworn "representation" during a status conference that Jackson maintained the records in his capacity as a Special Deputy United States Marshal, a June 17, 2014 order dismissed (Doc. 1-2 at 67–68) the petition because "[c]ourt records, federal documents and federal criminal investigations are not subject to [Chapter 119, Florida Statutes]," Florida's public records law. The order granted the plaintiffs a chance to amend the petition "on or before July 7, 2014." On

June 30, 2014, the United States, on behalf of Jackson and under 28 U.S.C. § 1442, removed (Doc. 1) the petition.[1]  The plaintiffs move (Doc. 11) to remand and, in the alternative, move (Doc. 12) under Rule 59(e), Federal Rules of Civil Procedure, to alter or vacate the state court's order.  The City of Sarasota argues that the plaintiffs failed to comply with the "July 7 amendment deadline" and moves (Doc. 23) to dismiss the petition for failure to prosecute.

A removing defendant bears the burden of establishing federal jurisdiction.  *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001).  Under Section 1442, a federal officer can remove to federal court a civil action against the federal officer.  In order to preserve the removal under Section 1442, the United States must prove that Jackson maintained the records in his capacity as a Special Deputy United States Marshal, not as a Sarasota detective.  In the notice of removal, the United States argues that the records are "documents that [Jackson] . . . maintained, in his capacity as a Special Deputy United States Marshal and at the direction of the United States Marshal Service, in connection with his official duties on the Florida/Caribbean Regional Fugitive Task Force."  (Doc. 1 at 1–2)  Also, the United States argues that Jackson "created" the records in his capacity as a Special Deputy United States

---

[1] "In general, parties cannot remove to federal court, under Section[] 1441, a case that has gone to final judgment in the state court." Wright & Miller, *Federal Practice and Procedure*, Vol. 14C, § 3731 (4th ed. 2014). However, a federal officer can "use . . . [Section] 1442 to remove a case that has proceeded to judgment in state court." *Hadley-Mem'l Hosp. v. Kynard*, 981 F. Supp. 690, 691 (D.D.C. 1997) (Robertson, J.); *see Maseda v. Honda Motor Co.*, 861 F.2d 1248, 1252 (11th Cir. 1988) ("[A] state court judgment in a case removed to federal court does not foreclose subsequent proceedings in the case in federal court.").

Marshal. (Doc. 1 at 1) The United States suggests that Jackson's "creating" the records in his capacity as a Special Deputy United States Marshal rather than holding the records in trust for a state officer increases the likelihood that Jackson "maintained" the records in his capacity as a Special Deputy United States Marshal.

In response to the "Court's Interrogatories" (Doc. 42-1), Jackson under oath confirms that "[a]ll applications submitted were at the direction of the United States Marshal Service and pursuant to [his] duties as a member of the Florida/Carribean Regional Fugitive Task Force." (Doc. 43 at 1–2) Specifically, Jackson states (1) that he identified himself in at least one application as "Michael P. Jackson, Special Deputy United States Marshal, United States Marshals Service," (2) that, during a month in which he applied for the use of cell phone tracking equipment, the U.S. Marshals Service reimbursed the Sarasota Police Department for a portion of Jackson's salary, and (3) that, during a month in which he applied for the use of cell phone tracking equipment, "Supervisory Deputy United States Marshal Miguel Lopez" directly supervised Jackson. (Doc. 43 at 2–3) Also, Jackson states that he maintained "many of the applications" in a computer folder entitled "US Marshals." (Doc. 43 at 2)

In the motion to remand and in the motion to alter or vacate the state court's order, the plaintiffs unpersuasively argue that this court lacks jurisdiction because "Jackson created, used, and maintained the state Stingray applications and search orders as a Sarasota . . . Detective." (Doc. 11 at 6) The plaintiffs claim that Jackson

- 3 -

must have "created" the state applications in his capacity as a Sarasota detective (1) because a federal officer cannot use in federal court "[a]ny fruits of a state Stingray search order" and (2) because under Rule 41, Federal Rules of Criminal Procedure, a federal officer must obtain a search warrant from a federal judge. (Doc. 11 at 9–10) The plaintiffs suggest that Jackson's "creating" the records in his capacity as a Special Deputy United States Marshal increases the likelihood that Jackson "maintained" the records in his capacity as a Special Deputy United States Marshal.

Even if the U.S. Marshals Service may not use the "fruits of a state Stingray search order" in federal court, the U.S. Marshals Service may use "a state Stingray search order" to apprehend a state fugitive. Under 28 U.S.C. § 566(e)(1)(B), "[t]he United States Marshals Service is authorized to . . . investigate such fugitive matters, both within and outside the United States, as directed by the Attorney General." The Attorney General "establish[ed] permanent Fugitive Apprehension Task Forces consisting of Federal, State, and local law enforcement authorities . . . , to be directed and coordinated by the United States Marshals Service, for the purpose of locating and apprehending [state and federal] fugitives." Pub. L. No. 106–544, § 566(a), 114 Stat. 2715, 2718 (2000); Authority of FBI Agents, Serving as Special Deputy United States Marshals, to Pursue Non-Federal Fugitives, 19 Op. O.L.C. 33, 33 (1995). As a Special Deputy United States Marshal and as a member of the "Florida/Carribean Regional Fugitive Task Force," Jackson may use "a state Stingray search order" to apprehend a state fugitive.

- 4 -

Although under Rule 41 a federal officer must apply to a federal judge for a search warrant, each of Jackson's applications was an application for the "use of a pen register or a trap and trace device," not for a warrant. (Doc. 43 at 3) Under Section 934.32(1)(b), Florida Statutes, "[a]n investigative or law enforcement officer may [apply] for an order . . . authorizing or approving the installation and use of a pen register or a trap and trace device." Section 934.02(6) defines an "investigative or law enforcement officer" as "any officer of the State of Florida or political subdivision thereof, of the United States, or of any other state or political subdivision thereof." As a federal officer, Jackson may apply in a Florida court for the use of a Stingray device.

The plaintiffs unpersuasively argue that Jackson created and maintained the records in his capacity as a Sarasota detective. The United States has established federal jurisdiction by proving that Jackson created and maintained the records in his capacity as a Special Deputy United States Marshal. The plaintiffs' motion to remand (Doc. 11) is **DENIED**.

The plaintiffs petition under Chapter 119, Florida Statutes, for release of the records. Chapter 119 governs Florida's policy on "state, county, and municipal records." Therefore, the plaintiffs cannot compel under Chapter 119 records created and maintained by a Special Deputy United States Marshal. The state court correctly decided that the records "are not subject to" Chapter 119. "The only grounds for granting a [Rule 59(e), Federal Rules of Civil Procedure,] motion are newly-

discovered evidence or manifest errors of law or fact." *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007). The state court committed no such error. The plaintiffs' motion to alter or vacate the state court's order (Doc. 12) is **DENIED**.

Although the state court's order granted the plaintiffs a chance to amend the petition, the plaintiffs instead moved to alter or vacate the state court's order. The City of Sarasota's motion (Doc. 23) to dismiss the petition because the plaintiffs failed to comply with the "July 7 amendment deadline" is **DENIED**.

ORDERED in Tampa, Florida, on January 6, 2015.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE