[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-15848
_____

D.C. Docket No. 8:14-cv-01606-SDM-TGW


AMERICAN CIVIL LIBERTIES UNION OF FLORIDA, INC.,

Plaintiff - Appellant,

MICHAEL BARFIELD,

Plaintiff,

versus

CITY OF SARASOTA,
MICHAEL JACKSON,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(June 20, 2017)

Before JORDAN and JULIE CARNES, Circuit Judges, and SCHLESINGER,[*] District Judge.

JORDAN, Circuit Judge:

Federal subject-matter jurisdiction over this removed case depends on whether Michael Jackson, a state law enforcement officer, created, submitted, and/or maintained certain records sought by the American Civil Liberties Union of Florida in his capacity as a deputized federal officer. The ACLU twice asked for jurisdictional discovery on Mr. Jackson's status, but both requests were denied. The district court instead issued its own interrogatories to Mr. Jackson.

Because the jurisdictional facts in this case are genuinely in dispute and there was no undue delay by the ACLU, the district court erred in denying the motions for discovery. We therefore reverse.

## I

The ACLU sued Mr. Jackson and the City of Sarasota in Florida state court to compel the production of 34 applications by Mr. Jackson for state-court orders authorizing the use of cell phone tracking devices, which the ACLU asserted were public records created and maintained by a Florida municipal officer and subject to production under Florida Statute § 119.07. The state court dismissed the ACLU's state-law mandamus petition without prejudice after lawyers for the United States

---

[*] Honorable Harvey E. Schlesinger, United States District Judge for the Middle District of Florida, sitting by designation.

asserted, at a non-evidentiary status conference, that Mr. Jackson had created, submitted, and/or maintained the requested documents in his capacity as a Special Deputy U.S. Marshal. *See* D.E. 1-2 at 67. As one of the grounds for dismissal, the state court accepted the government's representation that the 34 applications (and the corresponding orders) had been created, submitted, and/or maintained by a federal officer.[1]

Before the ACLU appealed, the United States, on behalf of "Special Deputy [U.S.] Marshal" Jackson, removed the case to federal district court under 28 U.S.C. § 1442(a)(1) (providing for federal officer removal). *See* D.E. 1 at 1–2. The ACLU moved to remand a few days later, disputing the government's assertion that Mr. Jackson had been acting as a federal officer when he submitted the applications. It also asked the district court for jurisdictional discovery to ascertain the capacity in which Mr. Jackson had created, submitted, and/or maintained the documents sought.

The magistrate judge denied the request for discovery, and the district court propounded its own interrogatories to Mr. Jackson, asking him to identify the capacity in which he had applied for two of the orders. Mr. Jackson responded that

---

[1] Another ground upon which the state court denied the ACLU's petition was that Chapter 119 of the Florida Statutes does not apply to the requested documents because they are judicial records. *See generally Times Pub. Co. v. Ake*, 660 So. 2d 255, 257 (Fla. 1995). We cannot address the merits of this ruling because, as we explain, the district court erred by completely denying the ACLU a role in its inquiry into subject-matter jurisdiction. And because "[w]ithout jurisdiction the court cannot proceed at all in any cause," *Ex parte McCardle*, 74 U.S. 506, 514 (1868), we remand this case to the district court for a proper determination of jurisdiction.

3

all of the applications he submitted for cell tracking devices were at the direction of the U.S. Marshals Service. *See* D.E. 43 at 1–2. He provided specifics on only two of the requested applications, and admitted signing one as "Detective Michael P. Jackson, Sarasota Police Department," and referring to himself in that application as a detective with the City. *See id.* at 2.

Relying mostly on these answers, the district concluded that it had subject-matter jurisdiction because the government had established that Mr. Jackson had acted as a federal officer. *See* D.E. 44 at 5. Following this ruling, the district court denied another request by the ACLU for jurisdictional discovery and entered final judgment, concluding that the ACLU's state-law petition could not compel the production of documents held by a federal officer. *See* D.E. 61. This appeal followed.

## II

Federal subject-matter jurisdiction over this case depends on whether Mr. Jackson created, submitted, and/or maintained the 34 applications and orders in his capacity as a detective for the City of Sarasota Police Department or as a cross-sworn Special Deputy U.S. Marshal. Given the parties' factual dispute, the issue is whether the district court erred by twice denying the ACLU's request for jurisdictional discovery.

We generally review a district court's adjudication of a motion for jurisdictional discovery for abuse of discretion. *See, e.g.*, *Butler v. Sukhoi Co.*, 579 F.3d 1307, 1314 (11th Cir. 2009). But we have also cautioned that "jurisdictional discovery is not entirely discretionary." *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 729 (11th Cir. 1982). When it comes to discovery of jurisdictional facts genuinely in dispute, the broad discretion district courts ordinarily enjoy over discovery runs up against two countervailing forces.

The first is that, because of the "fundamental constitutional precept of limited federal power," a district court "should inquire into whether it has [subject-matter] jurisdiction at the earliest possible stage in the proceedings." *Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 409–10 (11th Cir. 1999) (citation omitted). In an action like this one, removed from state court, we have said that a district court's "first" task is to "determine whether it has original jurisdiction over the plaintiff's claims." *Id.* This means that a district court confronted with a factual challenge to its jurisdiction cannot ignore a genuine factual dispute simply because it arises at the pleading stage. Rather, it has an "obligation at any time to inquire into jurisdiction," *Fitzgerald v. Seaboard Sys. R.R.*, 760 F.2d 1249, 1251 (11th Cir. 1985), including probing into and resolving any factual disputes which go to its power to adjudicate the matter. *See id.*

5

(remanding to the district court to resolve factual dispute necessary to determine jurisdiction).

The second is that, because ours is an adversarial system, litigants cannot be completely excluded from this inquiry. Indeed, the Federal Rules of Civil Procedure expressly contemplate involvement by the parties in the discovery of relevant nonprivileged matter, *see* Fed. R. Civ. P. 26(b)(1) ("*[p]arties* may obtain discovery") (emphasis added), which jurisdictional discovery undoubtedly is. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978) (approving of discovery by the parties "to ascertain the facts bearing on [jurisdictional] issues"). This is particularly true when jurisdictional facts are intertwined with the facts central to the merits of the complaint. *See, e.g.*, *Bell v. Hood*, 327 U.S. 678, 682–83 (1946). In such cases, "a plaintiff must have ample opportunity to present evidence bearing on the existence of jurisdiction." *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir. 1991). *Cf. Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1215–18 & 1216 n.71 (11th Cir. 2007) (recognizing that jurisdictional discovery is available for federal question cases).

The upshot of these hydraulic pressures is that, when facts that go to the merits and the court's jurisdiction are intertwined and genuinely in dispute, parties have a "qualified right to jurisdictional discovery," *Eaton*, 692 F.2d at 729 n.7 (citation and internal quotation marks omitted), meaning that a district court abuses

6

its discretion if it completely denies a party jurisdictional discovery, *see id.* at 731, unless that party unduly delayed in propounding discovery or seeking leave to initiate discovery. *See Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n.7 (11th Cir. 1999) (rejecting argument that plaintiffs were erroneously denied jurisdictional discovery where they made "no discovery efforts . . . in the eight months between the time [they] filed the complaint and the time it was dismissed"). The district court here erred when it completely denied the ACLU any opportunity to inquire into the capacity in which Mr. Jackson created, submitted, and/or maintained the requested documents, a fact which implicates both the merits of the ACLU's claim and the court's jurisdiction under § 1442(a)(1). *See generally Mesa v. California*, 489 U.S. 121, 129 (1989) ("[F]ederal officer removal must be predicated on the allegation of a colorable federal defense.").[2]

The interrogatories propounded by the district court do not render this error harmless. For one, they could not have completely resolved the jurisdictional dispute because the court only asked for details with respect to two of the 34 applications. And one of the two applications for which Mr. Jackson did give specifics contradicted, at least at first glance, his general assertion that all

---

[2] No one contends that the ACLU unduly delayed seeking discovery. And because the ACLU filed its first motion for jurisdictional discovery roughly two weeks after this case was removed to federal court, no one seriously could.

applications were at the behest of and on behalf of the U.S. Marshals Service. *See* D.E. 43 at 2. Given the limited record, this was a factual inconsistency the district court should not have resolved solely on the papers.

For these reasons, we reverse the judgment entered against the ACLU and remand this case to the district court to allow the ACLU jurisdictional discovery. *See, e.g.*, *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 463 F. Supp. 2d 583, 585–86 (E.D. La. 2006) (permitting limited jurisdictional discovery in case removed under § 1442(a)(1)), *aff'd*, 485 F.3d 804 (5th Cir. 2007). The district court, of course, retains discretion "with respect to the form that the discovery will take." *Eaton*, 692 F.2d at 729 n.7 (citation omitted).

**REVERSED AND REMANDED.**

**UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

June 20, 2017

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  16-15848-GG
Case Style:  American Civil Liberties Unio v. City of Sarasota, et al
District Court Docket No:  8:14-cv-01606-SDM-TGW

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, costs taxed against the appellees.

The Bill of Costs form is available on the internet at www.ca11.uscourts.gov

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Joe Caruso, GG at (404) 335-6177.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Djuanna Clark
Phone #: 404-335-6161

OPIN-1A Issuance of Opinion With Costs